**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

LALUMFLAND, LLC, et al.,

    Plaintiffs,

v.

FIRST COAST ENERGY, L.L.P., a
Colorado limited liability
partnership,

    Defendant.

Case No. 3:21-cv-533-TJC-PDB

## O R D E R

This case requires the Court to decide whether the Petroleum Marketing Practices Act (PMPA) completely preempts state law such that Plaintiffs' state law claims are removable based on federal question jurisdiction. This case is before the Court on Plaintiffs' Motion to Remand (Doc. 10), to which Defendant responded in opposition (Doc. 14).

**I. BACKGROUND**

Plaintiff Lalumfland, LLC owns several gas stations. (Doc. 3 ¶ 13). Lalumfland and the remaining Plaintiffs ("Dealers") manage the stations. Id. Defendant First Coast Energy, L.L.P, is a marketer and distributor of petroleum products. Id. ¶ 15. Plaintiffs bring ten state law claims which all regard circumstances surrounding two contracts involving Plaintiffs and First

Coast. (See Doc. 3). The first contract is a Confidential Settlement Agreement ("CSA") to which Lalumfland is a third party because "it was not a party [to] the litigation that spawned the CSA." Id. ¶ 19. Lalumfland agreed to enter into the CSA "based on the representations of First Coast that it would work in good faith [] and cooperatively to build up the gas station business that had been jeopardized by the previous owner/operator." Id. Plaintiffs' claims relating to the CSA include breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment. (See Doc. 3).

The second category of contracts are Dealer Supply Agreements ("DSA") between First Coast and each Dealer in which First Coast "agreed to sell, and the respective Dealers agreed to purchase certain specified minimum amounts of motor fuel per year . . . ." Id. ¶ 29. Plaintiffs' claims relating to the DSAs include recission, anticipatory breach of contract, breach of contract, breach of implied covenant of good faith and fair dealing, negligent misrepresentation, fraudulent misrepresentation, and unjust enrichment.[1] (See Doc. 3).

First Coast, in its Notice of Removal, alleges that Plaintiffs are the ones breaching the DSAs and that because of these breaches, "the parties have been negotiating the termination of these franchises since November 2019." (Doc. 1 at 4). On May 3, 2021, First Coast "sent counsel for the Dealers a draft letter

---

[1] Plaintiffs also allege that First Coast violated the Florida Franchise Act, FLA. STAT. § 817.416. (Doc. 3 at 20).

2

terminating the Dealers' franchises pursuant to section 2802 of the PMPA." Id. On May 12, 2021, Plaintiffs filed their Complaint in state court. Id.

First Coast removed the Complaint to this Court based on federal question and supplemental jurisdiction. Id. at 2. Plaintiffs allege only state law claims in their Complaint, but First Coast argues that the Complaint nevertheless pleads a federal question because some of Plaintiffs' claims are preempted by subchapter I of the PMPA, 15 U.S.C. § 2806(a)(1). Id. at 4–5.

## II. MOTION TO REMAND

### A. Complete Preemption

If a complaint filed in a state court pleads a federal claim, the case can be removed to a federal district court under 28 U.S.C. § 1441(a). "The test ordinarily applied for determining whether a claim arises under federal law is whether a federal question appears on the face of the plaintiff's well-pleaded complaint." Connecticut State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1343 (11th Cir. 2009) (citing Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 152 (1908)). It is "settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption . . . ." Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987) (emphasis in original).

However, there is an "independent corollary" to these rules; if "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state

3

common-law complaint into one stating a federal claim . . .'" the complaint may be removed to federal court based on federal question jurisdiction. Id. (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987)). This complete preemption doctrine only applies "when federal law so occupies a given field that a state-law claim is transformed into a claim 'arising under' federal law." Dunlap v. G&L Holding Grp., Inc., 381 F.3d 1285, 1290 (11th Cir. 2004) (quoting Geddes v. Am. Airlines, Inc., 321 F.3d 1349, 1353 (11th Cir. 2003)). Complete preemption is much more rare than ordinary preemption; the Supreme Court has only found complete preemption in a few situations.[2] See id. at 1291. "[T]he touchstone of federal question jurisdiction based on complete preemption is congressional intent." Id. (internal quotations omitted).

The Eleventh Circuit has provided limited guidance regarding complete preemption. In analyzing different circuits' tests for complete preemption while

---

[2] "To date, the Supreme Court has identified only three statutes that completely preempt related state-law claims: (1) § 301 of the Labor Management Relations Act [LMRA], 29 U.S.C. § 185; (2) § 1132 of the Employee Retirement Income Security Act of 1974 [ERISA], 29 U.S.C. § 1001 et seq.; and (3) §§ 85 and 86 of the National Bank Act, 12 U.S.C. § 21 et seq." Dunlap, 381 F.3d at 1291 (citing Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 7–11 (2003)); see also Johnson v. MFA Petroleum Co., 701 F.3d 243, 248 (8th Cir. 2012) (recognizing the same three statutes as being completely preempted). Other courts have extended complete preemption to encompass other statutes that pertain to areas of "special federal interest" such as railroads. See Johnson, 701 F.3d at 248.

4

considering the preemptive force of section 612 of the Cable Act, the Eleventh Circuit noted:

> These cases reveal a varying emphasis on such questions as whether the state claim is displaced by federal law under an ordinary preemption analysis, whether the federal statute provides a cause of action, what kind of jurisdictional language exists in the federal statute, and what kind of language is present in the legislative history to evince Congress's intentions. Despite the variations, however, all [the tests] focus on a similar goal: to determine whether Congress not only intended a given federal statute to provide a federal defense to a state cause of action that could be asserted either in a state or federal court, but also intended to grant a defendant the ability to remove the adjudication of the cause of action to a federal court by transforming the state cause of action into a federal [one].

Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc., 182 F.3d 851, 857 (11th Cir. 1999) (internal quotations omitted) (alterations in original). The Eleventh Circuit proceeded to analyze the legislative history of the Cable Act and compare the preemptive language used to that of other statutes the Supreme Court has held to implicate complete preemption. Id. at 857–58. Because Plaintiffs plead only state law claims, the Court is tasked with determining whether Plaintiffs' claims are completely preempted by federal law such that their claims are "transformed" into federal claims.

### B. Petroleum Marketing Practices Act

First Coast argues that subchapter I of the PMPA completely preempts Plaintiffs' claims. (Doc. 1 at 4–5). Subchapter I of the PMPA "federalizes the law of oil franchise regulation and prohibits an oil franchisor from terminating or failing to renew a dealer-franchisee except for narrowly defined 'good cause.' The Act also creates a private cause of action for gasoline station dealers who believe their franchises have been unjustly terminated." Comment, Retail Gasoline Franchise Terminations and Non-renewals Under Title I of the Petroleum Marketing Practices Act, 522 DUKE L. J. 522, 522 (1980). Subchapter I contains the following preemption provision:

> To the extent that any provision of this subchapter applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or the furnishing of notification with respect thereto) of any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this subchapter.

15 U.S.C. § 2806(a)(1).

In support of their argument, First Coast relies heavily on Shukla v. BP Expl. & Oil, Inc., 115 F.3d 849, 856 (11th Cir. 1997) for the proposition

6

that § 2806(a)(1) is a strong preemption provision that preempts all claims that are "intimately bound up" with the termination or nonrenewal of a franchise. Id. However, the Eleventh Circuit in Shukla was only considering the defense of ordinary preemption, not complete preemption. See id. at 856–57. Further, it is not clear that Plaintiffs' claims are preempted under Shukla.[3] Even assuming arguendo that Plaintiffs' claims are preempted under ordinary preemption principles, that is but one factor in the complete preemption analysis. See Blab, 182 F.3d at 857. Complete preemption is a much more stringent standard that should be applied sparingly for fear of complete preemption swallowing up the well-pleaded complaint rule in its entirety. See Johnson v. MFA Petroleum Co., 701 F.3d 243, 247 (8th Cir. 2012).

Most importantly, the Court must consider whether Congress intended to transform claims like Plaintiffs' into federal claims arising under the PMPA. The PMPA contains its own federal cause of action,[4] but the preemption

---

[3] First Coast argues that Plaintiffs "ignore[] the obvious connection between First Coast's notice of termination of the eight PMPA franchise relationships and the complaint . . . ." (Doc. 14 at 1). However, Plaintiffs do not allege any causes of action directly related to the termination or non-renewal of their franchises. (Doc. 3).

[4] "If a franchisor fails to comply with the requirements of section 2802, 2803, or 2807 of this title, the franchisee may maintain a civil action against such franchisor. Such action may be brought, without regard to the amount in controversy, in the district court of the United States in any judicial district in which the principal place of business of such franchisor is located or in which such franchisee is doing business . . . ." 15 U.S.C. § 2805(a).

7

language is not nearly as broad as other statutes the Supreme Court has determined implicate complete preemption. Compare ERISA, 29 U.S.C. § 1144(a) ("Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.") (emphasis added), and LMRA, 29 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . . .") (emphasis added), and Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California, 463 U.S. 1, 23 (1983) (noting that "even in state court, any action to enforce an agreement within the scope of [LMRA], § 301 would be controlled by federal law"), with PMPA, 15 U.S.C. § 2806(a)(1) ("To the extent that any provision of this subchapter applies to the termination . . . of any franchise, or to the nonrenewal . . . of any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation . . . with respect to termination . . . or to the nonrenewal . . . unless such provision of such law or regulation is the same as the applicable provision of this subchapter.") (emphasis added). Further, the legislative history of the PMPA confirms the

8

limited nature of the PMPA preemption provision. See H.R. REP. NO. 103-737, at 2–3 (1994), reprinted in 1994 U.S.C.C.A.N. 2779, 2780 ("Specifically, section 3 clarifies that: (1) PMPA preemption does not extend to state regulation of underlying contract provisions . . . ."); S. REP. NO. 95-731, at 42 (1978), reprinted in 1978 U.S.C.C.A.N. 873, 900 ("To the extent that the provisions of Title I do not apply to an aspect of the franchise relationship, state laws dealing with such aspects of the relationship are not preempted.").

First Coast cites to only one Eighth Circuit case that held a district court had subject matter jurisdiction over removed state law claims relating to the termination of a franchise. See (Doc. 14 at 7); Cont'l Enterprises, Inc. v. Am. Oil Co., 808 F.2d 24, 28 (8th Cir. 1986). However, the Eighth Circuit did not consider complete preemption and neither the Eighth Circuit nor the district court in Continental stated the basis for removal jurisdiction; meaning it could have been removed based on diversity jurisdiction, in which case there would be no complete preemption issue. See id.; Cont'l Enterprises, Inc. v. Am. Oil Co., 628 F. Supp. 126, 127 (W.D. Mo.), aff'd, 808 F.2d 24 (8th Cir. 1986). Several other district courts have held that subchapter I of the PMPA completely preempts state law claims, but these courts' reasonings are more akin to ordinary preemption, not complete preemption. See C.A.L.L. Grp., Inc. v. Exxon Mobil Corp., No. 08-CV-391-PB, 2009 WL 2513604, at *4 (D.N.H. Aug. 14, 2009); Mehdi-Kashi v. Exxon Mobil Corp., No. CIV.A. H-01-719, 2002 WL

9

32052603, at *4 (S.D. Tex. Jan. 7, 2002); see also Johnson, 701 F.3d at 248 ("Sometimes there is confusion between complete preemption and what has been termed 'ordinary' preemption.").

First Coast's arguments are proper for a potential defense of preemption, not for removal based on complete preemption. Despite the PMPA preemption provision, Congress, and courts, including the Eleventh Circuit, have acknowledged that not all claims relating to petroleum franchise agreements are preempted. See Shukla, 115 F.3d at 855–57. Congress has not expressed a clear intent in the PMPA to completely preempt all state law claims related to petroleum franchise agreements. The state court claims alleged in the Complaint are not completely preempted by the PMPA.[5]

Accordingly, it is hereby

**ORDERED:**

1. Plaintiffs' Motion to Remand (Doc. 10) is **GRANTED**.

2. The case is **REMANDED** to the Circuit Court of the Fourth Judicial Circuit, in and for Duval County, Florida.

3. After remand has been effected, the Clerk shall terminate any pending deadlines and close the file.

---

[5] Though the Court need not reach the issue, the state law claims in the Complaint may not even be ordinarily preempted by PMPA.

**DONE AND ORDERED** in Jacksonville, Florida the 9th day of December, 2021.



TIMOTHY J. CORRIGAN
United States District Judge

ckm
Copies:

Clerk, Fourth Judicial Circuit, Duval County
Counsel of record